

*Sid J. Reid,* for appellant.

*E. B. Stokes* and *Bradley & Patten,* for appellee.

HUMPHREYS, J. On May 18, 1939, appellee filed a suit against appellants in the chancery court of Grant county upon a note and mortgage given to secure same in the sum of $900 executed by appellants to the Central Printing Company.

It was alleged in the complaint that appellant, on January 19, 1939, executed and delivered to the Central Printing Company their promissory note of $900, with interest, payable in monthly installments of $75 each, and to secure said note made, executed and delivered to said Central Printing Company a mortgage on certain real estate in Grant county, Arkansas, particularly describing the property; that said note and mortgage were assigned to appellee by the printing company and that it became the owner and holder thereof, for value before maturity, and was an innocent purchaser, and asked for judgment on the note and the foreclosure of the mortgage given to secure the payment of the note.

Appellants filed an answer and cross-complaint, in substance, as follows: Denied the allegations of the complaint and further pleaded that the note and mortgage sued on were made, executed and delivered to appellee as agent for the Central Printing Company; further alleged that the consideration for the note and mortgage was that said Central Printing Company would print and publish for Showers & Company, a company owned and controlled by said appellants, a legal publication to be known as "Lawyer's Ready Reference Manual," and that said manual should be placed on the market for $10 per volume; that a contract was entered into between Showers & Company and the Central Printing Company December 19, 1938, whereby the printing company agreed for a sum of $740.70 to print 500 volumes of said manual, and said printing company was to complete the printing of said manual within 30 days from date of contract. One hundred dollars was paid on execution of the contract and balance when the job was completed and delivered; that appellants were induced through solicitations and representations of appellee to deliver to the printing company the note and mortgage sued on herein and pay over the proceeds of the loan to the printing company, long before the delivery of the books; that the printing company failed to live up to its contract, never delivering the books to appellants, thus breaching its contract and the consideration for the note and mortgage failed. It was further alleged that the appellee as agent for printing company, negotiated the loan, inspected the premises of appellants, passed on the abstract and knew what the consideration of same was for, and further stated to appellants that it was not looking to them for payment, but was looking to the printing company for payment; that appellee is not and was not a purchaser of said note before maturity and is not an innocent purchaser; that said assignment, if given, was wholly fictitious and fraudulent; that appellee knew when it turned over the money to printing company that the books contracted for by appellants had not been delivered, and had full knowledge that the consideration had failed; that appellants have been damaged by reason of

the breach of the contract in sum of $5,000, and asked that the printing company be made a party to the action, for damages in said sum and that the mortgage be canceled and set aside.

Thereafter, the Central Printing Company was served with summons and appeared specially and filed a motion to quash same, which motion was granted and the printing company was no longer treated as a party in the case.

An amendment was filed to the complaint to the effect that J. R. Longas obtained a mortgage on the same real estate from appellants on the 19th day of August, 1938, which was placed of record on the 26th day of January, 1939, subsequent to the date the mortgage sought to be foreclosed was filed for record in Grant county, Arkansas, and that the note and mortgage sought to be foreclosed were assigned to appellee in due course of business, before maturity and with no notice or knowledge of the mortgage which was executed by appellants to J. C. Longas. The prayer of the complaint was that J. C. Longas be made a party defendant and that his mortgage be held junior and subject to any and all rights of appellee.

Proper service by warning order was had upon J. C. Longas and he did not appear in the case, but made default.

The cause was submitted to the court upon the pleadings and testimony introduced by the respective parties resulting in a decree dismissing appellants' cross-complaint against appellee and a judgment for appellee for the amount due on the note and a foreclosure of the mortgage lien on the real estate and an order of sale thereof to satisfy the debt.

The court also found that appellee's mortgage lien was prior and paramount to the mortgage lien of Jack Longas, from which decree appellants have duly prosecuted an appeal to this court.

The note, mortgage and the written assignment thereof by the Central Printing Company to appellee

were introduced in evidence. The written contract between the Central Printing Company and Showers & Company was also introduced.

This contract was dated December 19, 1938, and provided, in substance, that the Central Printing Company should print in book form five hundred copies of "Lawyer's Ready Reference Manual" for $740.70, $100 cash which was paid and balance to be paid when job was completed. The record reflects that a short time before the "manuals" were ready for delivery, George Rose, a member of the Central Printing Company, notified Showers & Company it would expect the balance in cash when the books were ready for delivery; that in order to procure the cash H. C. Showers and his wife were willing to mortgage their home and made application to appellee for a loan with which to pay the Central Printing Company, but appellee refused to lend the money to Showers & Company and take a mortgage on land. Appellant, H. C. Showers, then requested Rose to contact appellee and try to get a loan for $900 so that he could pay the Central Printing Company and have $200 or more left for his own use; that Rose succeeded in getting appellee to agree to loan the amount if the Central Printing Company would execute a note to it for $900 and if appellants would execute a note in like amount and secure same by a mortgage on said lands to the Central Printing Company and attach same as collateral to the $900 note which the Central Printing Company should execute to it with the right to first inspect the lands and examine the abstract of title thereto. After it inspected the land and approved the abstract of title appellants came to appellee's bank to execute the note and mortgage. O. D. Hadfield, an officer of the appellee bank, drew up the note and mortgage and they were executed and attached to the $900 note of the Central Printing Company as collateral after which appellee bank passed $900 to the credit of the Central Printing Company. George Rose, acting for the Central Printing Company, later paid appellants $200 out of the credit account and retained the balance as a payment on the contract for printing the "manual." Several

days thereafter appellee purchased the note and mortgage and took a written assignment thereof and filed same for record some time in May.

Appellants testified that H. C. Showers told O. D. Hadfield prior to the time they executed the note and mortgage that Showers & Company were borrowing money with which to pay the Central Printing Company and that they were executing the note and mortgage to secure same on the assurance of Mr. Rose, a member of the printing company, that he had the books ready to deliver to Showers & Company, and would deliver them immediately and that Hadfield's reply was that the Central Printing Company and Rose were reliable and would do what they had agreed to do and he would guarantee that they did; that they would not have executed the note and mortgage had it not been for such assurances and guarantee on the part of O. D. Hadfield.

O. D. Hadfield testified that he had no such conversation with them and never gave them any assurances or guaranteed that Rose or the Central Printing Company would comply with the contract they had with it. O. D. Hadfield testified positively that he knew nothing about the provisions of the contract between the Central Printing Company and Showers & Company and that he had no knowledge or information that appellants would claim that the Central Printing Company had breached its contract with Showers & Company relative to the printing of the "manuals." Appellants themselves testified that they never informed O. D. Hadfield after the execution of the note and mortgage or at the time they were executed that there had been any breach of the contract by the Central Printing Company for failure to print the "manual" in accordance with the terms thereof. O. D. Hadfield testified that appellee purchased the note and mortgage for value before maturity without any knowledge whatever that appellants were claiming that the Central Printing Company had breached its contract with Showers & Company.

The trial court found that appellee was an innocent purchaser of the note and mortgage and we are unable to say that such finding was contrary to a preponderance of the evidence.

The testimony introduced in the case was quite voluminous and most of it related to the questions of whether or not the Central Printing Company failed to print the "manual" in accordance with the terms of the contract between it and Showers & Company. We have read this evidence carefully and have concluded that a preponderance thereof shows that there was no breach of the contract.

It would extend this opinion to an unusual length to set out all the evidence bearing upon this issue and no useful purpose could be served by doing so. Suffice it to say, as stated above, that the preponderance or weight thereof shows that the contract was not breached for failure to print the "manual" in accordance with the terms of the contract.

No error appearing, the decree in all things is affirmed.

Opinion delivered February 17, 1941.